George Torgun (Bar No. 222085)
Nicole C. Sasaki (Bar No. 298736)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: george@baykeeper.org
Email: nicole@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a California non-profit corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>CITY OF BERKELEY and COMMUNITY CONSERVATION CENTERS, INC.,<br><br>            Defendants. | Case No.: 16-cv-02065-JSC<br><br>~~[PROPOSED~~] CONSENT DECREE<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

**CONSENT DECREE**

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of San Francisco Bay and other area waters;

WHEREAS, the City of Berkeley (the "City") and Community Conservation Centers, Inc. ("CCC") (collectively, "Defendants") respectively operate the City of Berkeley Transfer Station located at 1201 2nd Street, Berkeley, California and the Materials Recovery Facility located at 699 Gilman Street, Berkeley, California (collectively, the "Facility");

WHEREAS, Baykeeper, the City, and CCC are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ (hereinafter, the "Industrial Stormwater Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act (the "Clean Water Act" or "Act"), 33 U.S.C. § 1342. These industrial activities include, *inter alia*, processing municipal, commercial, and private solid waste to be transferred to a sanitary landfill; processing green waste for composting; and processing recyclables (i.e., plastic, glass, metal, and paper) collected by residential curbside, commercial pick-up, buyback, and drop-off recycling programs;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including Defendants: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on November 6, 2015 Baykeeper served Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources

Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, on April 20, 2016, Baykeeper filed a complaint ("Complaint") alleging certain violations of the Act and the Industrial Stormwater Permit and its previous version, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, Defendants deny all allegations and claims contained in the Complaint and reserve all rights and defenses with respect to such allegations and claims;

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.        OBJECTIVES

1.      It is the express purpose of the Parties to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251 *et seq*., and to resolve those issues alleged by Baykeeper in its 60-Day Notice and Complaint.  In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree and to comply with the Industrial Stormwater Permit and all applicable provisions of the Clean Water Act.

## II.        TERM OF CONSENT DECREE

2.      **Effective Date**:  The Effective Date of this Consent Decree shall be the last day for the U.S. Department of Justice to provide comment on this Consent Decree, i.e., the 45th day following the U.S. Department of Justice's receipt of the Consent Decree.

3.      **Term of Consent Decree**:  This Consent Decree shall continue in effect until September 30, 2019 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically

1    terminate, unless one of the Parties has invoked Dispute Resolution in accordance with Paragraph 26.

2        4.    **Early Termination**:  If Defendants should cease industrial operations at the site and file a

3    Notice of Termination ("NOT") under the Industrial Stormwater Permit prior to the termination date of

4    this Consent Decree, Defendants shall send Baykeeper a copy of the proposed NOT concurrent with its

5    submittal to the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of

6    the NOT, Defendants shall notify Baykeeper in writing of the approval and remit all outstanding

7    payments, including stipulated payments, to Baykeeper.  In the event a new successor or assign

8    continues industrial operations at the site and assumes responsibility for implementation of this Consent

9    Decree pursuant to Paragraph 45, Defendants shall notify Baykeeper within ten (10) days of the

10   transition.

### III.         BEST MANAGEMENT PRACTICES

12       5.    In order to further reduce or prevent pollutants associated with industrial activity from

13   discharging via stormwater to the waters of the United States, Defendants shall implement additional

14   appropriate structural and non-structural Best Management Practices ("BMPs") to, at a minimum,

15   comply with the requirements of the Industrial Stormwater Permit.

16       6.    **Site Map**:  Within thirty (30) days of the Effective Date, Defendants shall update the Site Map

17   included in the Facility SWPPP to comply with the Industrial Stormwater Permit, Section X.E.

18   Specifically, the Site Map shall clearly denote:  (a) the topography and the direction of stormwater flow

19   for each drainage area of the Facility, (b) property boundaries, (c) known or suspected drop inlets, (d)

20   ground type (pervious or impervious), (e) berms and the materials they are composed of, (f) any

21   permanent structures and features, (g) discharge points, (h) sampling points, and (i) all other physical

22   structures or items relevant under the Industrial Stormwater Permit and this Consent Decree.  During the

23   term of the Consent Decree, if Defendants make significant changes to the Facility, such as moving a

24   discharge or sampling point, modifying the topography of the site so as to change a drainage area, or

25   removing or adding structural BMPs, Defendants shall update the SWPPP within forty-five (45) days,

26   submit the revised SWPPP to Baykeeper, and upload the revised SWPPP to the Storm Water Multiple

27   Application and Report Tracking System ("SMARTS"), consistent with the requirements of Paragraph

28   11, below.

7.   **Non-Structural Best Management Practices**.  Beginning on the Effective Date, unless otherwise stated, Defendants shall implement the following non-structural BMPs:

A.   **Storm Drain Inlet/Catch Basin Best Management Practices:**

i.   Storm Drain Inlet/Catch Basin Inspections:  Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, beginning in 2017, Defendants shall inspect any storm drain inlets, catch basins, discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility.  Defendants or their designee(s) shall promptly clean, as needed, each drain inlet, catch basin, discharge and sampling point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

ii.   Storm Drain Inlet/Catch Basin Maintenance and Cleaning:  On a weekly basis between October 1 to May 31 of each year ("Wet Season"), Defendants shall inspect all storm drain inlets, catch basins, discharge and sampling points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris.  Defendants shall properly dispose of any dust, sediment, debris, or other removed pollutants.

iii.   Log of Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning:  Each Defendant shall prepare and maintain a log of the Storm Drain Inlet/Catch Basin Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  Each Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed.  All Maintenance Logs shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

B.   **Site Sweeping**:  Defendants shall mechanically sweep the accessible paved areas of the Facility that are accessible to mechanical sweepers two (2) times per day on days that Defendants are actively operating, and shall also sweep areas that are not accessible to mechanical sweepers by hand or vacuum at least monthly, and prior to any rain events on days that Defendants are actively operating, with the exception of the Container/Bin Storage, as depicted in Figure 1 of Exhibit 1.  Defendants shall move all containers and bins from the Container/Bin Storage Area for sweeping one time per year prior

to the rain season, and shall sweep around the inlet to DP-1A prior to any rain event on days that Defendants are actively operating.  Defendants shall continue to include on-site sweeping activity required under this Consent Decree in the daily work assignments for staff.  Such work assignments shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

C.      **Garbage/Trash Control**:  Within thirty (30) days of the Effective Date, Defendants shall conduct daily inspections of the Facility's perimeter and pick up wind-blown garbage and trash.

D.      **Maintenance of Paved Surfaces**:  No later than October 31, 2016, Defendants shall repave with asphalt Areas 1, 2, 3, 4 and 5 as depicted in Figure 1 of Exhibit 1, and the Truck Parking Area as depicted in Figure 2 of Exhibit 1.  Long-term preventative maintenance shall be performed to extend the life of the pavement.  Preventative maintenance shall be performed at 3 to 5 year intervals, depending on the deterioration rate of the pavement.  Typical preventative maintenance techniques include crack sealing, asphalt patching, and slurry seal applications.

E.      **Abandoned or Inutile Equipment Storage and Removal**:  Defendants shall either store under cover or remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading.

F.      **Vehicle and Equipment Management**:  Defendants shall implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges.  Such BMPs shall include relocating the vehicles elsewhere on the site to better facilitate sweeping of paved areas when feasible, placing drip pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt clean-up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

G.      **Vehicle and Equipment Maintenance**:  Defendants shall not conduct significant repairs that involve potential contamination, to vehicles or movable equipment at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events.

8.      **Structural Best Management Practices:**  Defendants shall develop and implement the following structural BMPs:

A.      **Transfer Station:**

i.      <u>Green Waste Operations.</u>  Defendants shall continue to conduct all green waste receiving, processing, and shipping inside of the Transfer Station/Tipping Floor, and shall repair the mist generating system by September 30, 2016, for dust control in the Tipping Floor.

ii.      <u>Construction Debris Operations.</u>  Defendants shall continue to conduct all construction debris receiving, processing, and shipping in the Construction Debris Receiving Area, as depicted in Figure 1 of Exhibit 1.  Defendants shall use a mist generating or other dust suppression system for dust control in the Construction Debris Receiving Area. No later than October 31, 2016, Defendants shall implement diversion of the existing trench drain Figure 1 of Exhibit 1, to the stormwater holding tank for discharge to the sanitary sewer and have secured necessary permits and installed necessary infrastructure to divert stormwater collected from the Construction Debris Receiving Area. Stormwater shall be held and discharged to the East Bay Municipal Utility District ("EBMUD") Sanitary Sewer ("Sanitary Sewer"), according to all applicable permit requirements.  Temporary stormwater storage shall be sufficient to meet the volume-based treatment standard in the Industrial Stormwater Permit (85th percentile 24-hour storm).

iii.      <u>Diversion to Sanitary Sewer.</u>  No later than October 31, 2016, Defendants shall have secured necessary permits and installed necessary infrastructure to divert stormwater collected from Catchment Area B, as depicted in Figure 1 of Exhibit 1.  Stormwater shall be held and discharged to the EBMUD Sanitary Sewer, according to all applicable permit requirements.  Temporary stormwater storage shall be sufficient to meet the volume-based treatment standard in the Industrial Stormwater Permit (85th percentile 24-hour storm).

iv.      <u>Miscellaneous Containers.</u>  Within thirty (30) days of the Effective Date, Defendants shall cover all containers for household appliances and cardboard, as depicted in Figure 1 of Exhibit 1, at the end of each work day and prior to rain events, provided that such covers may be removed when the Defendants are actively operating.

B.   **Recycling Center:**

i.      Truck Parking.  No later than October 31, 2016, Defendants shall install an asphalt berm around the storage container to the Ecology Center office building to eliminate stormwater discharge from DP-5, as depicted in Figure 2 of Exhibit 1, and direct stormwater to new discharge location DP-5A as depicted in Figure 2 of Exhibit 1.   No later than October 31, 2016, Defendants shall install wattles around DP-5A, designed to capture sediment, heavy metals, and oil and grease.

ii.      Glass Sorting Area.  No later than October 31, 2016, Defendants shall install an asphalt berm and trench drain or other engineered drainage solution in front of the Glass Sorting Area, as depicted in Figure 2 of Exhibit 1, to direct stormwater to holding tanks for temporary storage prior to discharge to the Sanitary Sewer.

iii.      Commingled Container Storage Area.  No later than October 31, 2016, Defendants shall install an asphalt berm and trench drain or other engineered drainage solution in front of the Commingled Container Storage Area, as depicted in Figure 2 of Exhibit 1, to facilitate temporary storage prior to discharge to the Sanitary Sewer.

iv.      Customer Recycling Area.  No later than October 31, 2016, Defendants shall install a canopy or awning structure and asphalt berm, as depicted in Figure 2 of Exhibit 1.

v.      Diversion to Sanitary Sewer.  No later than October 31, 2016, Defendants shall have secured necessary permits and installed necessary infrastructure to divert stormwater collected from the Glass Sorting and Commingled Container Storage Areas, as depicted in Figure 2 of Exhibit 1. Stormwater shall be held and discharged to the Sanitary Sewer, according to all applicable permit requirements.  Temporary stormwater storage shall be sufficient to meet the volume-based treatment standard in the Industrial Stormwater Permit (85th percentile 24-hour storm).

C.      Defendants shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all structural BMPs by the required deadlines.

D.      **Maintenance of BMP Structural Controls:**  Beginning on the Effective Date or the date of installation, Defendants shall maintain all structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

9.    **Employee Training:**  Defendants shall develop and implement an employee training program that meets the following requirements:

A.    No later than October 31, 2016, Defendants shall develop and implement a training program, including any training materials needed for effective implementation of the training program, for the Facility ("Training Program").  The Training Program shall ensure: (1) that there are sufficient number of employees delegated to achieve compliance with the Industrial Stormwater Permit and this Consent Decree, and (2) that these employees are properly trained to perform the activities required by the Industrial Stormwater Permit and this Consent Decree.  At a minimum, the Training Program shall require the following:

i.    Language.  Defendants shall conduct the Training Program in the language or languages in which all employees participating are fluent;

ii.    BMP Training.  Defendants shall train all employees responsible for compliance with, or implementing, the BMPs included in this Consent Decree and the SWPPP, to ensure that BMPs are implemented effectively and on schedule, and structural BMPs are maintained properly.  Defendants shall train individual employees on their specific responsibilities in implementing BMPs.

iii.    Stormwater Sampling Training.  In the event the City ceases to contract for stormwater sampling, it shall designate an adequate number of employees or consultants necessary to collect stormwater samples as required by this Consent Decree.  The Training Program shall include the proper sampling protocols to ensure stormwater samples are properly collected, stored, and submitted to a certified laboratory.

iv.    Visual Observation Training.  In the event the City ceases to contract for visual observation and monitoring of the Facility, it Defendants shall provide training on how and when to properly conduct visual observations to all employees performing visual observations at the Facility.

v.    Industrial Stormwater Permit Training.  Defendants shall train all employees at the Facility on the Industrial Stormwater Permit's prohibition of non-stormwater discharges, so that employees know what non-stormwater discharges are, that non-stormwater discharges can result from spills, stains from previous spills, improper surface washing, or dust and sediment control methods, and how to detect and prevent non-stormwater discharges.

vi.      All employees responsible for compliance with, or implementing, the BMPs included in this Consent Decree and the SWPPP shall participate in the Training Program no later than October 31, 2016.  New such employees shall participate in the Training Program within thirty (30) days of their hiring date.

vii.      The Training Program shall be provided by a representative of Defendants, who is familiar with the requirements of this Consent Decree and the Industrial Stormwater Permit.

viii.      Defendants shall maintain training records to document compliance with this section, and shall provide Baykeeper with a copy of these records within fourteen (14) days of receipt of a written request.

ix.      If and when appropriate, Defendants shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP.  Defendants shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

10.   **Amendment of SWPPP**:

A.      No later than October 31, 2016, Defendants shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in Section III of the Consent Decree and Section X of the Industrial Stormwater Permit, and submit the updated SWPPP to Baykeeper within ten (10) business days thereafter.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes, Defendants shall make all of Baykeeper's changes to the amended SWPPP unless Defendants timely request a meet and confer in accordance with Paragraph 26 to discuss any concerns.  Compliance with the SWPPP, as amended in accordance with this Paragraph, shall at all times be a requirement of this Consent Decree.

B.      Defendants shall revise the Facility SWPPP if there are any material changes in the Facility's operations, including, but not limited to, changes to stormwater discharge points or BMPs. These SWPPP revisions shall occur within thirty (30) days of the changes in operations.

C.      Defendants shall submit to Baykeeper any revised SWPPP within ten (10) days of the revisions.  Baykeeper shall provide comments, if any, to Defendants within thirty (30) days of receipt of

the revised SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Defendants shall make all of Baykeeper's changes to the amended SWPPP unless Defendants timely request a meet and confer in accordance with Paragraph 26 to discuss any concerns.

D.      Defendants shall upload the Facility SWPPP to SMARTS within thirty (30) days of finalizing revisions in accordance with this Consent Decree.

11.   **Additional BMPs**:  The BMPs included in this Section constitute a preliminary approach to stormwater management at the Facility for the first Wet Season of the agreement.  If, after implementing these BMPs, the sampling conducted in accordance with Section IV indicates that the Facility's stormwater discharges continue to exceed the Action Levels in Exhibit 2, Defendants shall propose additional BMPs as part of any Action Plan prepared in accordance with Paragraph 15. Additional BMPs may include, but are not limited to, further diversions to the Sanitary Sewer, advanced treatment, and additional overhead coverage.

### IV.      SAMPLING, MONITORING, INSPECTION & REPORTING

12.   **Sampling Program - Stormwater**:  Beginning with the 2016-2017 Wet Season, Defendants shall collect and analyze stormwater samples from all discharge points according to the following schedule:

A.      Defendants shall collect and analyze samples from the first two (2) qualifying storm events ("QSEs") within the first half of each Wet Season during the term of this Consent Decree (October 1 to December 31).

B.      Defendants shall collect and analyze samples from the first two (2) QSEs within the second half of each Wet Season during the term of this Consent Decree (January 1 to May 31).

C.      If Defendants are unable, because the QSEs occur during non-business hours or due to safety concerns, to take a sample from the discharge points shown on Figures 1 and 2 of Exhibit 1 during any of the first two (2) QSEs of the first half of the Wet Season or the first two (2) QSEs of the second half of the Wet Season, Defendants shall continue to sample from any subsequent QSE until four (4) samples have been collected from all discharge points in that Wet Season.

D.      In the event that Defendants are unable to collect four (4) samples in a Wet Season, Defendants shall explain in writing in the End-of-Season Summary under Paragraph 14 why they were

1    unable to collect the required sample(s).

2        E.    Each stormwater sample must be analyzed for the presence of each of the parameters

3    listed in Exhibit 2.

4        F.    Should industrial processes materially change at the Facility, Defendants shall conduct

5    sampling for any additional analytical parameters listed in Table 1 of the Industrial Stormwater Permit

6    and additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in the Facility's

7    stormwater discharges in significant quantities as a result of the changed industrial processes.

8    Defendants shall notify Baykeeper of any such changes within thirty (30) days of such a change.

9        G.    **Qualifying Storm Event**:  Under this Consent Decree, a qualifying storm event is as

10   defined in the Industrial Stormwater Permit, Section XI.B.

11       H.    **Certified Lab**:  Except for pH samples, Defendants shall have all stormwater samples

12   collected pursuant to this Consent Decree delivered to a California state certified environmental

13   laboratory for analysis within the time needed for analysis within laboratory method allowable hold

14   times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or

15   below the Action Levels set forth in Exhibit 2.  Baykeeper shall be permitted, and Defendants will

16   authorize Baykeeper, to verify that the lab analyzing Defendants' stormwater samples that their analysis

17   is proper.

18       I.    **Sample Result Reporting**:  After the Effective Date, Defendants shall provide complete

19   results from sampling and analysis to Baykeeper within ten (10) calendar days and to SMARTS within

20   thirty (30) days of receipt of the laboratory report from each sampling event.

21   13.   **Rain Gauge**:  Defendants shall monitor weather station E1227 (EW1227 Berkeley; located at

22   Latitude 37.85 / Longitude -122.29 @ 49 ft, Mesonet APRSWXNET/CWOP from the National Weather

23   Service website http://www.wrh.noaa.gov/map/?obs=true&wfo=mtr). Defendants shall record and

24   maintain records from this weather station on a weekly basis. In the event that the weather station

25   becomes inoperable, Defendants will notify Baykeeper, and within thirty (60) days thereafter shall

26   install a recording rain gauge capable of continuously recording rainfall at the Facility to 0.01 inches.

27   Defendants shall maintain the rain gauge in accordance with manufacturers' recommendations, maintain

28   records of all maintenance, and provide maintenance records within fourteen (14) days of a request by

Baykeeper.

14.   **End-of-Season Summary**:  By July 15 following each Wet Season that occurs during the term of the Consent Decree, Defendants shall prepare and send to Baykeeper an End-of-Season Summary that includes:  (1) a summary chart with all of the sample results from the previous Wet Season including the constituent concentration(s) from sample(s) collected at the Facility exceeding the Action Levels in Exhibit 2 ("Exceedance(s)"); and (2) identification of any new BMP(s) that Defendants have implemented or will implement not already discussed in a prior End-of-Season Summary or Action Plan for the immediately previous Wet Season.

15.   **Action Plan**:  If any stormwater sample result during a Wet Season exceeds any Action Level set forth in Exhibit 2, Defendants shall submit an Action Plan in addition to an End-of-Season Summary by July 15.

16.   **Contents of Action Plan**:  If an Action Plan is required, it shall include the following:

    A.   The possible sources of the Exceedance(s) during the applicable Wet Season;

    B.   A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in future stormwater discharges to the Action Levels in Exhibit 2 and to achieve BAT and BCT for those constituents;

    C.   Data, drawings, and other design rationale demonstrating that the proposed site-specific BMPs will reduce pollutants in future stormwater discharges to the Action Levels in Exhibit 2 and achieve BAT and BCT; and

    D.   A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.  In any Action Plan, Defendants shall consider appropriate structural BMPs as necessary to adequately address their Exceedances.

17.   **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  However, if Baykeeper notifies Defendants within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, Baykeeper shall have an additional fifteen (15) days to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, Defendants shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request to meet and confer, in

accordance with Paragraph 26.

18. **Implementation of Action Plan**:

A.      Defendants shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

B.      Defendants shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Action Plan.  Defendants shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by the October 1 deadline.

C.      Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, Defendants shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP and shall provide Baykeeper with a copy of such revised SWPPP.

19.   During each Wet Season, Defendants have an ongoing obligation to evaluate the BMPs implemented at the Facility and included in this Consent Decree and any current or previous Action Plans, and, if Defendants have exceeded Action Levels, make attempts to reduce the concentrations to Action Levels and otherwise meet BAT or BCT for the remainder of the Wet Season.  Defendants shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

20.   **Site Access**:  During the Term of this Consent Decree, Defendants shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide Defendants twenty-four (24) hours' notice in advance of such Site Inspections.  Baykeeper shall comply with all safety instructions provided to Baykeeper by Defendants' staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, logs, and take photos and/or videos.

21.   **Reports**:  During the Term of this Consent Decree, Defendants shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the Regional

1    Water Board or State Water Board.

2                   **V.        MITIGATION, FEES AND COSTS**

3        22.   **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in

4    Baykeeper's 60-Day Notice and Complaint, within thirty (30) days of the Effective Date, Defendants

5    shall pay the sum of twenty thousand dollars ($20,000) to the Rose Foundation for Communities and the

6    Environment ("Rose Foundation"), an environmental non-profit organization, for projects that will

7    benefit the San Francisco Bay watershed.  The Rose Foundation reports the grant funding made with the

8    tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and

9    purpose of the funds. Payment shall be made to Rose Foundation, 1970 Broadway, Suite 600, Oakland,

10   California 94612 within thirty (30) days of the Effective Date, with notice to Baykeeper.

11       23.   **Reimbursement of Fees and Costs**:  Defendants shall reimburse Baykeeper in the amount of

12   nineteen thousand five hundred dollars ($19,500) to help cover Baykeeper's reasonable investigation,

13   expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating

14   the activities at the Facility related to this Consent Decree, bringing these matters to Defendants'

15   attention, and negotiating a resolution of this action.  Defendants shall tender said payment, payable to

16   Baykeeper, within thirty (30) days of the Effective Date.

17       24.   **Compliance Monitoring Funds:**  Defendants shall provide to Baykeeper a total of nine

18   thousand dollars ($9,000) for costs and fees associated with monitoring Defendants' compliance with

19   this Consent Decree through the termination date of this agreement.  The total compliance monitoring

20   fund payment shall be made payable to Baykeeper within thirty (30) days after the Effective Date.

21       25.   **Interest on Late Payments:**  Defendants shall pay interest on any payments, fee or costs owed

22   to Baykeeper under this Consent Decree that Baykeeper has not received by the date due.  The interest

23   shall accrue starting the first day after the payment is due and shall be computed at 1.5% per month

24   (18% per year).

25                   **VI.       DISPUTE RESOLUTION AND STIPULATED PENALTIES**

26       26.   **Dispute Resolution**:  If a dispute under this Consent Decree arises or the Parties believe that a

27   breach of this Consent Decree has occurred, they shall follow the following procedure:

28

A.      The Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree or any other condition or event that triggers dispute resolution has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.

B.      If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights, remedies and defenses under the law, including bringing an appropriate motion before the United States District Court for the Northern District of California.

C.      The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

D.      For informal or formal dispute resolution, Defendants bear the burden of proving the BMPs constitute BAT/BCT or are in compliance with the Consent Decree.

27.   **Stipulated Payments:**  Defendants shall pay the following stipulated payments during the Term of this Consent Decree.

A.      $1,000 for each failure to collect a sample required under this Consent Decree;

B.      $500 per day after the report due date for each failure to timely submit any document, report or other communication required in this Consent Decree; and

C.      $500 per day payment for every business day (Monday through Friday, excluding state and federal holidays) past the due date that Defendants fail to submit any payments due under Paragraphs 22-24 of this Consent Decree.

D.      $500 per day for every day past the due date that Defendants fail to install or implement a BMP required by this Consent Decree or Action Plan.

E.      Any stipulated payments described above shall be paid to Baykeeper within thirty (30) days of notification of the failure to comply.

### VII.      JURISDICTION AND DISMISSAL OF COMPLAINT

28.   **Jurisdiction.**  For the purposes of this Consent Decree, the Parties stipulate that the United

States District Court for the Northern District of California, has jurisdiction over the Parties and subject matter of this Consent Decree.  The Parties stipulate that venue is appropriate in the Northern District of California and that Baykeeper has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

29.   **Jurisdiction to Enforce Consent Decree.**  The Court referenced above shall retain jurisdiction over the Parties and subject matter of this Consent Decree for the purpose of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

30.   **Submission of Consent Decree to DOJ.**  Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) calendar days after receipt by DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

31.   **Dismissal of Complaint:**  If there is no objection by DOJ to this Consent Decree, the Parties shall (a) request the approval and entry of this Consent Decree in the exact form presented to DOJ, and (b) concurrently stipulate to and request dismissal of this action with prejudice.  Such dismissal shall not affect the rights and obligations of the Parties under this Consent Decree, nor shall it affect the power of the Court to enforce this Consent Decree.

### VIII.      WAIVER AND RELEASES

32.   **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Defendants, their officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.  Nothing in this

Consent Decree limits or otherwise affects Baykeeper's rights to address or take any position that they deem necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance with the Industrial Stormwater Permit or the Clean Water Act occurring or arising after entry of this Consent Decree.

33. **Defendants' Waiver and Release of Baykeeper**:  Defendants, on their own behalf and on behalf of their officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

## IX. MISCELLANEOUS PROVISIONS

34. **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

35. **Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

36. **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

37. **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of their respective Party and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

38. **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

39. **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

40.   **Choice of Law**:  This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

41.   **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.

42.   **Effect of Consent Decree**:  Compliance with this Consent Decree does not mean Defendants are complying with the Industrial Stormwater Permit, Clean Water Act, or any other law, rule, or regulation.

43.   **Negotiated Agreement**:  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

44.   **Modification of the Agreement**:  This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

45.   **Assignment**:  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

46.   **Mailing of Documents to Baykeeper/Notices/Correspondence**:  Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

> San Francisco Baykeeper
> Attention: Nicole Sasaki
> 1736 Franklin Street, Suite 800
> Oakland, CA 94612
> E-mail:  nicole@baykeeper.org

Unless requested otherwise by Defendants, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Defendants pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

City of Berkeley
Attention: City Attorney
2180 Milvia Street, Fourth Floor
Berkeley, California 94704
Email: attorney@cityofberkeley.info

Community Conservation Centers, Inc.
Jeffrey Belchamber
1563 Solano Avenue, #106
Berkeley, CA 94707
Email: Jeff@berkeleyrecycling.org

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

47. **Impossibility of Performance**:  No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood.  "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay.  Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

48. In addition, provided that Defendants promptly seek and, diligently pursue, the necessary permits from EBMUD as described in this Consent Decree, failure to obtain those permits within the time frame anticipated or required by this Consent Decree, or to take any action dependent on their issuance shall not be considered a default of any obligation under this Consent Decree.  However, in the event permits are not attainable from EBMUD within the time frame anticipated or required by this Consent Decree, or in the event of their denial, Defendants shall notify Baykeeper within thirty (30) days to submit revised, alternative BMPs.

1    The Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the

2    Court for its approval and entry as a final judgment.

3    SAN FRANCISCO BAYKEEPER

4    Date: May 12, 2016

5

6    *George Torgun*

7    George Torgun
     Managing Attorney, San Francisco Baykeeper

8

9

10   CITY OF BERKELEY

11   Date:

12

13   *D. Williams-Brdl*

14   By: Dee Williams-Ridley
     Title: City Manager

15

16   COMMUNITY CONSERVATION CENTERS, INC.

17   Date:

18

19   _____

20   By: Jeffrey Belchamber
     Title: Executive Director

21

22

23   APPROVED AND SO ORDERED, this 13th day of    July

24                                              _____.

25   UNITED STATES DISTRICT JUDGE

26

27                    GRANTED

28   _____
                Judge Jacqueline Scott Corley

CONSENT DECREE, page 21                                    Case No. 16-cv-02065-JSC

1    The Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the

2    Court for its approval and entry as a final judgment.

3    SAN FRANCISCO BAYKEEPER

4    Date: May 12, 2016

5

6    _George Torgun_____

7    George Torgun
     Managing Attorney, San Francisco Baykeeper

8

9

10   CITY OF BERKELEY

11   Date:

12

13

14   By: Dee Williams-Ridley
     Title: City Manager

15

16   COMMUNITY CONSERVATION CENTERS, INC.

17   Date:   5-18-16

18

19   _Jeffry Belchamber_____

20   By: Jeffrey Belchamber
     Title: ~~Executive Director~~   General Manager

21

22

23   APPROVED AND SO ORDERED, this ___ day of _____.

24

25   UNITED STATES DISTRICT JUDGE

26

27   _____

28

CONSENT DECREE, page 21                              Case No. 16-cv-02065-JSC

# EXHIBIT 1



**EXPLANATION**

**Existing Features**

- ■ Catch Basin
- ● Storm Drain Manhole
- **DP-1A** ◉ Monitoring Point
- ⤬⤬⤬ Fence
- ➔ Flow Arrow
- Area Subject to General Permit and Impervious Area
- Materials Directly Exposed to Rain
- Run-on or Flooding Area
- Property Boundary
- Curb/Berm
- ▨ Storm Filter Vault
- — ss — Sanitary Sewer
- — sd — Storm Drain
- Trench Drain

**Proposed New Features**

- Asphalt Repaving Approximate Areas 1, 2, 3, 4, and 5
- Phase 1

**TRANSFER STATION**
Berkeley Transfer Station and Recycling Center
1201 Second St. and 669 Gilman St.
Berkeley, California

amec foster wheeler

Figure
**1**

Date: 04/27/2016   Project No. OD12163590.01.06

S:\OD12\163590\task_02.5\_fig_01.ai



**EXPLANATION**

**Existing Features**

- ■ Catch Basin
- ● Storm Drain Manhole
- DP-4 ⊙ Monitoring Point
- ✕✕✕✕ Fence
- → Flow Arrow
- Area Subject to General Permit and Impervious Area
- Materials Directly Exposed to Rain
- ▬·▬·▬ Property Boundary

**Proposed New Features**

- ▬▬ New trench drain to holding tank for discharge to sanitary sewer
- ▬▬ New Canopy Structure
- ▬▬ Approximate Berm Location
- ▬▬ Replace Approximate Pavement Area
- ▬▬ Phase 1

0    100
Feet

ECOLOGY AND CCC
Berkeley Transfer Station and
Recycling Center
1201 Second St. and 669 Gilman St.
Berkeley, California

amec
foster
wheeler

Figure
**2**

Date: 04/28/2016 | Project No. OD12163590.01.06

S:\OD12\16359\0\task_02.5\_fig_02.ai

# EXHIBIT 2

**Action Levels for Stormwater Sampling**

| Constituent | Action Levels | Source |
|---|---|---|
| **pH** | 6.0 – 9.0 SU | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Suspended Solids** | 100 mg/L Annual 400 mg/L Instantaneous Maximum | *California Industrial General Permit 2014-0057-DWQ* |
| **Oil and Grease** | 15 mg/L Annual 25 mg/L Instantaneous Maximum | *California Industrial General Permit 2014-0057-DWQ* |
| **Chemical Oxygen Demand** | 120 mg/L Annual | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Aluminum** | 0.75 mg/L Annual | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Iron** | 1.0 mg/L Annual | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Copper** | 0.0332 mg/L Annual | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Zinc** | 0.26 mg/L Annual | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Lead** | 0.262 mg/L Annual | *California Industrial General Permit 2014-0057-DWQ* |